UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **CHERYL SCHRAUFNAGEL,**<br> on behalf of herself and<br>on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>**GEICO CASUALTY COMPANY,**<br>a foreign insurance corporation,<br><br>    Defendant. | Civil Action No. 2:19-cv-01608<br><br>Jury Trial Demand |

## CLASS ACTION COMPLAINT

Plaintiff, Cheryl Schraufnagel ("Ms. Schraufangel" or "Plaintiff"), on behalf of herself and all others similarly situated, file this Class Action Complaint against GEICO Casualty Company ("GEICO" or "Defendant"), and in support thereof alleges as follows:

### NATURE OF THE ACTION

1. This is a class action lawsuit by Plaintiff, the named insured under the GEICO automobile policy issued for private passenger auto physical damage coverage (the "Policy"),[1] including collision or comprehensive physical damage coverage, that required payment for loss limited to the "Actual Cash Value" ("ACV") in the event of a total loss of the insured vehicle. Plaintiff brings claims for breach of contract and declaratory relief.

2. Insureds, such as Plaintiff and the putative Class Members, pay a premium in exchange for GEICO's promise to repair any damage to an insured vehicle caused by a covered

---

[1]. The Insurance Policy, under which Plaintiff was insured, and which is materially identical to the Policy under which all putative Class members were insured, is attached hereto as "**Exhibit A**".

peril. However, GEICO's obligation to repair any damage is not limitless; rather, it is limited (or capped) to the ACV of the insured vehicle – for example, GEICO is not obligated to spend $20,000 to repair extensive damage to a vehicle that is only worth $5,000. Under such circumstances, where the cost to repair damage exceeds the value of the vehicle (less retained value), the vehicle is considered a "total-loss." If a "total-loss" occurs, GEICO's contractual obligation is limited to paying the ACV of the total-loss vehicle – the "replacement cost" of the vehicle, less depreciation/betterment.

3. Plaintiff and the putative Class Members lived up to their end of the bargain by paying the premiums owed and abiding by all contractual requirements. GEICO did not. Rather, in addition to taking advantage of its ability under the Policy to decline to repair the damage to the insured vehicles, GEICO did not even pay the costs to replace the total-loss vehicles notwithstanding its promise and obligation to do so. Instead, GEICO cut corners by declining to pay the unavoidable costs of sales tax and the mandatory title transfer fees necessary to replace the vehicle.

4. Defendant is a large private insurance company that, based upon Plaintiff's information and belief, collects hundreds of millions of dollars in private-passenger physical damage coverage premiums every year from its insureds. Among other coverages, Defendant offers collision and comprehensive physical damage coverage, under which GEICO promises to pay the cost to replace total-loss insured vehicles, accounting for depreciation or betterment. Nevertheless, upon information and belief, Defendant systematically underpaid the ACV of total-loss vehicles insured by Plaintiff and thousands of other putative class members.

5. This lawsuit is brought by Plaintiff on behalf of herself and on behalf of all other similarly situated insureds who suffered damages due to Defendant's practice of failing to fully

pay the ACV of insured vehicles in making total-loss payments to first-party insureds. Specifically, as a matter of uniform procedure, Defendant fails to include sales tax and/or vehicle title transfer fees in making payment for total-loss claims.

6. GEICO's failure to pay the ACV of insured vehicles on first-party claims that GEICO determined to be a total-loss constitutes a breach of the Policy and a clear breach of contract as to Plaintiff and every member of the putative Class defined herein.

## **JURISDICTION AND VENUE**

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) Plaintiff is a member of the putative class, which consists of at least 100 members, and at least one member of the putative class is a citizen of a different state than Defendant; (b) upon information and belief, the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs; and (c) none of the exceptions under § 1332 apply to this claim.

8. Venue is proper in this court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district and Defendant is subject to personal jurisdiction in this district.

## **PARTIES**

9. At all times material hereto, Plaintiff Schraufnagel was domiciled and resided in Dodge County, Wisconsin, and has been a citizen of the State of Wisconsin.

10. At all times material hereto, Defendant is and was a foreign corporation located in the State of Maryland, incorporated in Maryland and with its principal place of business in Maryland, and authorized to transact insurance in the State of Wisconsin.

## **FACTUAL ALLEGATIONS**

3

Case 2:19-cv-01608-JPS   Filed 11/01/19   Page 3 of 16   Document 1

A.      **<u>The GEICO Policy</u>**

11.     The Policy includes Defendant's standardized language as to physical damage coverage, including collision and/or comprehensive physical damage coverage, which promises to pay the ACV of the insured vehicle in the event of a total loss.

12.     The Policy promises to pay for loss caused by collision or other-than-collision (comprehensive) occurrences. Exhibit A (Policy) at pgs. 8-9 of 16.

13.     Loss is defined, *inter alia*, as "direct and accidental loss of or damage to" the vehicle. Policy at pg. 8 of 16.

14.     The Policy promises to pay for loss either by repairing or replacing the property or by paying for the loss in money. Policy at pg. 11 of 16.

15.     In repairing or replacing the property, the Policy permits GEICO to consider non-OEM replacement parts, exclude diminution in value, and utilize specific repair facilities for competitive rates of repair facilities. Policy at pg. 10 of 16.

16.     However, the Policy does not require payment of the costs to repair the damage in all circumstances. Instead, if such costs are sufficiently extensive, the vehicle is considered a "total" loss and GEICO's limit of liability is capped at the ACV of the insured vehicle. *Id*.

17.     Under the Policy, ACV is defined as "the replacement cost of the auto or property less depreciation or betterment." Policy at pg. 8 of 16. Moreover, the Policy permits GEICO to consider the physical condition of the vehicle prior to the loss in paying the ACV of the vehicle. Policy at pg. 10 of 16.

18.     In the case of a total-loss, because GEICO is paying the ACV of the vehicle prior to the loss, GEICO is entitled to the salvage value of the vehicle, but permits the insured to pay GEICO in order to retain the salvage. Policy at pg. 11 of 16. Such agreement has no impact on

Policy terms concerning GEICO's liability for loss.

19.     The Policy does not condition any payment on proof that a new vehicle was purchased, nor does the Policy condition the amount of ACV on the amount paid, if at all, to replace the vehicle. The Policy does not condition the amount of ACV on the amount originally paid, if at all, on the total-loss vehicle. Rather, the ACV of the insured vehicle is independent from any amount originally spent on the total-loss vehicle and from any amount spent to replace the vehicle.

20.     Under the Policy, the ACV of the insured vehicle does not depend on the insured's interest in the vehicle – owned, financed, or leased – and does not depend on disposition of salvage, incurred costs, or any other factor. *See, e.g.*, Policy at pg. 8 of 16 (defining "owned auto" as any vehicle for which a premium is paid).

**B.      Sales Tax and Title Transfer in the State of Wisconsin**

21.     During the relevant time period, the State of Wisconsin imposed sales tax of 5% on every vehicle transaction.

22.     During the relevant time period, counties and localities imposed a surtax of up to 1.5%.

23.     During the relevant time period, the State of Wisconsin required all vehicles to be legally titled in order to be legally operable on the roadways and highways of the state. *See, e.g.*, Wis. Stat. § 342.05. Prior to 2019, the fee imposed on the transfer of the title was $69.50; since 2019, the fee imposed on the transfer of title is $157.00.

24.     During the relevant time period, car dealers were and are required to secure and remit to the State the title transfer fee and provide proof thereof to the transferee, and to provide the form demonstrating the transfer along with the fee to the State.

25. During the relevant time period, no private-passenger vehicle could be replaced without paying sales tax and title transfer fees in the amount prescribed by law.

26. Sales tax and legal title fees are part of the value of a vehicle.

27. Sales tax and title transfer fees are reasonably necessary to replace a vehicle in the State of Wisconsin.

28. Sales tax and title transfer fees are included in the cost to replace (less depreciation/betterment) a vehicle in the State of Wisconsin and are thus part of the ACV of a vehicle insured under GEICO's Policy.

29. As set forth above, the Policy does not exclude from "cost to replace less depreciation" the applicable sales tax for the damage or stolen property nor title transfer fees, nor does the Policy contain any provision deferring or conditioning payment of sales tax and title transfer fees for any reason or based on any factor whatsoever.

C. **Plaintiff's Total Loss Claim**

30. Plaintiff owned a 2005 Volkswagen Jetta Sedan GLS TDI (VIN No. 3VWSR69M15M034540) ("Insured Vehicle"), which was insured under the Policy issued by Defendant.

31. On or about March 8, 2017, Plaintiff was involved in an accident while operating the Insured Vehicle. As a result of the accident, Plaintiff filed a claim for property damage with Defendant, Claim Number 045735382-0101-039 (the "Claim").

32. GEICO determined that the subject loss was caused by a covered peril.

33. In determining the amount of loss caused by an occurrence, GEICO determined that the cost to repair the damage exceeded the vehicle value and determined the loss to be a total-loss, thereby capping GEICO's liability for loss at the ACV of the insured vehicle.

34. Plaintiff does not challenge GEICO's determination that the loss was a total-loss, nor that the relevant limitation is ACV. Plaintiff does not allege that GEICO owes the cost to repair the vehicle which was determined to exceed the limitation on liability.

35. The vehicle value was calculated by an independent vehicle valuation company CCC Information Services, Inc. ("CCC") based on the listed underlying sale price of comparable vehicles of the same make, model, and age, and further accounting for depreciation based on mileage as well as specific features that may exist on a comparable vehicle but not the insured vehicle, or vice versa. After deriving the "base value," CCC then determines the underlying "adjusted value" by accounting for the actual condition of the vehicle prior to the loss.

36. Defendant, through CCC, determined that the Insured Vehicle's underlying "adjusted value" was $3,570.00. *See* **Exhibit B** (Valuation Report).

37. The Valuation Report did not determine the ACV and did not include amounts for sales tax or title transfer fees – instead, the Valuation Report represented that "other factors (e.g. license and fees) may need to be taken into account"). *Id*. at 2.

38. Per its uniform practices, GEICO then creates a Total Loss Settlement Letter, which incorporates its determination (through CCC) of the "adjusted value" of the vehicle and any other relevant information if applicable to the claim, such as (but not limited to) deductible, salvage retention amount, adjustments for negligence, sales tax and regulatory fees (to the extent not incorporated from Valuation Report), or adjustments based on any stated policy value.

39. As to Plaintiff, GEICO subtracted the deductible of $1,000.00 and salvage retention of $200.00 for a net total payment to Plaintiff in the amount of $2,370.00, and did not include any amount for applicable sales tax or title transfer fees.

40. As to Plaintiff and members of the putative Class, GEICO did not include sales tax

and/or title transfer fees in making payment for the total-loss of the insured vehicles notwithstanding its contractual obligation to do so under the clear terms of the Policy.

41. Defendant breached its Policy with Plaintiff by failing to pay the full amount for sales tax and title transfer fees and thus failing to pay the cost to replace the insured vehicle, less depreciation/betterment and accounting for physical condition.

42. Plaintiff and all members of the putative Class satisfied all conditions precedent, or such conditions precedent were waived or excused.

## CLASS ALLEGATIONS

43. Plaintiff brings this action on behalf of herself and as a class of all others similarly situated. This action is brought and is properly maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3).

44. Plaintiff seeks to represent a putative class (the "Class") defined as follows:

All Geico Casualty Company insureds under a private-passenger physical damage coverage who made a claim determined to be a covered claim and that Geico Casualty Company determined was a total-loss, where the total-loss payment by Geico Casualty Company did not include the applicable sales tax and/or title transfer fee amounts.

45. Excluded from the Class are Defendant and its subsidiaries and affiliates; its officers, directors, and members of their immediate families; any entity in which Defendant has a controlling interest; the legal representatives, heirs, successors, or assigns of any such excluded party; and any judicial officer to whom this action is assigned and the members of his or her immediate families.

46. The aforementioned class definition is clearly defined and ascertainable because it is based on objective facts, it is not vague or amorphous, and its members are readily identifiable based on objective criteria within GEICO's own possession.

47. Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add subclasses if necessary before this Court determines whether certification is appropriate.

### A. **Numerosity**

48. Although the precise number of members of the Class is unknown to Plaintiff at this time and can only be determined through appropriate discovery, Plaintiff believes that because Defendant is one of the largest auto damage insurers in the State of Wisconsin and writes and collects hundreds of millions of dollars of premiums, the Class affected by Defendant's unlawful practice consists of, at minimum, thousands of insureds or is otherwise so numerous that joinder of all Class members is impractical.

### B. **Commonality**

49. Defendant's conduct towards the Class raises common questions of law and fact. These common questions include, but are not limited to, the following: (a) whether the cost to replace a vehicle, less depreciation/betterment and accounting for physical condition, includes applicable sales tax; (b) whether the cost to replace a vehicle, less depreciation/betterment and accounting for physical condition, includes title transfer fees; (c) whether the Policy provides coverage for sales tax and/or title transfer fees in the event of a total-loss of the insured vehicle; and (d) whether GEICO breached its insurance contract with Plaintiff and the Class members by failing to pay full sales tax and title transfer fees as a part of its ACV payment upon the total loss of an insured vehicle.

### C. **Typicality**

50. Plaintiff's claims are typical of the claims of all other members of the Class because all such claims arise from the Defendant's failure to pay sales tax and title transfer fees on total

9

Case 2:19-cv-01608-JPS   Filed 11/01/19   Page 9 of 16   Document 1

loss claims of insured vehicles. The material facts underlying the claims of each putative class member are the same material facts as those supporting the Plaintiff's claims alleged herein, are based on materially-identical policy language and uniform conduct by GEICO, and require proof of the same material facts. Plaintiff is not making any unique claims nor is she subject to unique defenses such that a finding of typicality is precluded.

### D. Adequacy

51. Plaintiff can and will adequately represent the putative class and her interests are common to, and coincident with, those of all absent class members. By proving her individual claims, Plaintiff will necessarily prove the claims of the Class and prove Defendant's liability to the Class. Plaintiff has no known conflicts of interest with any members of the Class and no members of the Class benefitted from the conduct that harmed Plaintiff, i.e. GEICO's failure to include payment for sales tax and title transfer fees.

52. Plaintiff's counsel—Edelsberg Law P.A.; Dapeer Law, P.A.; Shamis & Gentile, P.A.; Normand PLLC; and Kotchen & Low LLP—has extensive experience in complex commercial litigation, class actions, and possess adequate financial resources to ensure that the interests of the Class will be advanced and the claim will be prosecuted.

### E. Predominance and Superiority

53. Defendant's conduct was uniform with respect to all prospective Class members, the applicable Policy is materially identical, and determination of whether the Policy provides coverage for sales tax and title transfer fees will resolve virtually the entirety of every claim at issue in a single stroke. Moreover, the damages sought are based on a uniform calculation of the applicable sales tax rate and flat fees imposed on every vehicle, and can be implemented ministerially. Common questions of law and fact predominate over individual questions.

54. In addition, class treatment is a superior form of adjudication than the prosecution of individual claims and provides a substantial benefit to the court and litigants by avoiding a multiplicity of suits and the concurrent risk of inconsistent and contradictory results.

55. Because the Class encompasses thousands of claims, at minimum, class treatment is plainly more efficient than thousands of individual law suits, each requiring the same discovery and proof. Given the relatively small amount of the claim(s) of each putative Class member and the cost of prosecuting a claim against a defendant with vast resources, it is likely that absent class representation, such claims could and would not be brought at all, and the Class would never have appropriate redress for Defendant's improper conduct. A class action is superior and more efficient to any other method for the fair and efficient adjudication of this controversy.

56. Class treatment ensures uniformity and consistency in results, enables the many small claims of Class members as well as claims for class-wide declaratory relief to be brought efficiently, and will provide optimum relief to Class members for their past and future injuries, as well as deter Defendant and other similar businesses from engaging in such wrongful conduct in the future.

57. Class treatment is manageable – similar class actions against GEICO in other states have been easily managed to conclusion – and no difficulties are foreseen providing notice to individual claimants because Defendant keeps records of insurance policies and claims and identities of prospective Class members during the class period, including records of total loss vehicles and payments made. Therefore, both the membership of the Class and the amount of individual damages is readily ascertainable from Defendant's records.

### F. Declaratory Relief Under Federal Rule of Civil Procedure 23(b)(2)

58. Pursuant to Federal Rule of Civil Procedure 23(b)(2), class treatment is warranted

because Defendant has acted or refused to act on grounds generally applicable to all the members of the Class, thereby making final declaratory relief concerning the Class as a whole appropriate.

59. Because declaratory relief is sought, class treatment ensures uniformity and consistency in results, enables the many small claims of Class members as well as claims for class-wide declaratory relief to be brought efficiently, and will provide optimum relief to class members for their past and future injuries, as well as deter Defendant and other similar businesses from engaging in such wrongful conduct in the future.

60. Because Defendant has acted consistently towards all members of the Class, declaratory relief is appropriate with respect to both the Class and Plaintiff's claims and is likewise subject to common proof and adjudication.

## COUNT I
## CLAIM FOR BREACH OF CONTRACT

61. The allegations contained in the paragraphs 1-60 are incorporated by reference herein.

62. This count is brought by Plaintiff on behalf of herself and the Class.

63. Plaintiff was party to a contract with Defendant as described herein. All Class members were parties to similar automobile insurance policies with Defendant that contained terms materially identical to Plaintiff's Insurance Policy.

64. Plaintiff and members of the putative Class made claims that Defendant determined to be covered claims their respective insurance policies. Defendant determined that the loss caused by the covered peril constituted a total-loss of Plaintiff's and every Class Member's insured vehicles.

65. Defendant, by paying the total loss claim, determined that Plaintiff and each Class member complied with the terms of their respective insurance contracts and thus fulfilled all duties

and conditions under the such contracts necessary to be paid for the total loss of the insured vehicle.

66. Pursuant to the Policy, upon the total-loss of Plaintiff's and the Class's insured vehicles, Plaintiff and every Class member were owed the ACV of the vehicle, defined as the cost to replace the vehicle less depreciation/betterment and accounting for physical condition, including unconditional payment of sales tax and title transfer fees.

67. Defendant failed to include sales tax and/or title transfer fees in its payments to Plaintiff and every Class member, and thus failed to pay the vehicle's ACV.

68. Defendant's failure to provide the promised coverage constitutes a material breach of contract with Plaintiff and with every member of the Class, respectively.

69. As a result, Plaintiff and every Class member is entitled to amounts owed under the Policy and not paid by GEICO, namely sales tax and/or title transfer fees, as well as prejudgment and post-judgment interest and other relief as is appropriate.

## COUNT II
## DECLARATORY RELIEF

1. The allegations contained in the paragraphs 1-60 are incorporated by reference herein.

1. This count seeks declaratory relief pursuant to Wis. Stat. § 806.04.

2. This count is brought by Plaintiff on behalf of herself and all members of the Class.

3. Plaintiff was party to a contract, the Insurance Policy, with Defendant as described herein.  *See* Exhibit A.  All Class members were parties to similar automobile insurance policies with Defendant that contained materially identical terms to Plaintiff's Insurance Policy.

4. Plaintiff seeks a declaratory judgment that an insured is unconditionally entitled to sales tax and title transfer fees in a full total loss payment to pay a vehicle's ACV under the insurance policies that govern Plaintiff's and the Class members' contractual relationships with

13

Case 2:19-cv-01608-JPS   Filed 11/01/19   Page 13 of 16   Document 1

Defendant.

5. Plaintiff contends Defendant is unconditionally required to pay sales tax and title transfer fees in a full total loss payment to pay a vehicle's ACV under the insurance policies that govern Plaintiff and the Class members' relationship with Defendant.

6. Defendant disagrees with Plaintiff's interpretation of the Insurance Policy.

7. Because of Defendant's claim to the contrary, Plaintiff and the Class are in doubt as to their rights under the Insurance Policy.

8. The above allegations present ascertained or ascertainable facts of a present controversy between Plaintiff and Defendant as to unconditional entitlement to the sales tax and title transfer fees.

9. The above allegations reflect that Plaintiff has presented a justiciable question as to the existence of her right to the sales tax and title transfer fees.

10. All antagonistic and adverse interests, namely Plaintiff, Defendant, and the Class when certified, are before this Court by the filing of this count.

11. Pursuant to Wis. Stat. § 806.04, Plaintiff and the Class are entitled to a declaration of its right to the sales tax and title transfer fees to resolve its doubt about its rights under the Insurance Policy considering the Defendant's position otherwise.

12. Upon the Court granting Plaintiff the declaratory relief requested herein, Plaintiff will seek supplemental relief pursuant to Wis. Stat. § 806.04(8) in the form of an order directing that the sales tax and title transfer fees be paid to Plaintiff and the Class, an award of attorney's fees incurred in establishing coverage under the Insurance Policy, and pre-judgment interest and post-judgment interest, as the sales tax and title transfer fees represents liquidated amounts.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff, individually and on behalf of the putative Class, demands relief and judgment as follows:

1. For an Order certifying this action as a Class Action on behalf of the Class described above;

2. For an award of compensatory damages for the Class in amounts owed by Defendant;

3. For declaratory relief to be entered for Plaintiff and the Class that its interpretation of the Insurance Policy is correct, thereby requiring Defendant to unconditionally pay sales tax and title transfer fees;

4. For all other damages according to proof;

5. For an award of attorney's fees and expenses as appropriate pursuant to applicable law;

6. For costs of suit incurred herein;

7. For pre- and post-judgment interests on any amounts awarded; and

8. For other and further forms of relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated:   November 1, 2019.                    Respectfully submitted,

*/s/Daniel Kotchen*
Daniel Kotchen
**KOTCHEN & LOW LLP**
1745 Kalorama Rd., N.W., Suite 101
Washington, D.C.  20009
(202) 468-4014

**EDELSBERG LAW, PA**
Scott Edelsberg *(pro hac vice to be filed)*
scott@edelsberglaw.com
David M. Sholl *(pro hac vice to be filed)*
david@edelsberglaw.com
20900 NE 30th Ave, Suite 417
Aventura, FL 33180
Telephone: (305) 975-3320

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis *(pro hac vice to be filed)*
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 400
Miami, Florida 33132
Telephone: (305) 479-2299
Facsimile: (786) 623-0915

**DAPEER LAW, P.A.**
Rachel Dapeer *(pro hac vice to be filed)*
rachel@dapeer.com
300 S. Biscayne Blvd, #2704
Miami, FL 33131
Telephone: (305) 610-5223

**NORMAND PLLC**
Edmund A. Normand
ed@ednormand.com
Jacob L. Phillips
jacob.phillips@normandpllc.com
service@normandpllc.com
3165 McCrory Place, Suite 175
Orlando, FL 32803
Telephone: (407) 603-6031
Facsimile: (888) 974-2175

16
Case 2:19-cv-01608-JPS   Filed 11/01/19   Page 16 of 16   Document 1